UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERNARD STEVENS-BEY and
DAVID L. WELLS,

                Plaintiffs,                CASE NO: 2:06-CV-10508

V.                                                        DISTRICT JUDGE DENISE PAGE HOOD
                                                        MAGISTRATE JUDGE STEVEN D. PEPE
PATRICIA CARUSO and
HUGH WOLFENBARGER,
in their individual capacities,

                Defendants.
_____/

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. # 15),
AND
PLAINTIFFS' MOTION TO DEFER SUMMARY JUDGMENT (DKT. #21)

I.      INTRODUCTION

Plaintiffs Bernard Stevens-Bey and Plaintiff David L. Wells are prisoners in custody of the Michigan Department of Corrections (MDOC). On February 7, 2006, they filed this action under 42 U.S.C. § 1983 against Patricia Caruso and Hugh Wolfenbarger, in their individual capacities(Plaintiffs' Complaint, Dkt. #1). Ms. Caruso is the Director of the MDOC and Mr. Wolfenbarger is the Macomb County Correctional Facility (MRF) Warden (Defendants' Motion for Summary Judgment, Dkt. #15-1, p. 1). Plaintiffs state that they are non-smokers suffering from serious medical conditions associated with breathing (Plaintiffs' First Amended Complaint, Dkt. #4, p. 3), and that Defendants have failed to protect Plaintiffs from involuntary exposure to environmental tobacco smoke (ETS), in violation of the Eighth Amendment. They seek

1

declaratory and injunctive relief, as well as an unspecified amount of monetary damages, for present and future injury (Dkt. #4, p. 2). Plaintiffs also make a state law claim under the Michigan Clean Indoor Air Act, MCL §§ 33.12601, *et seq*., which requires certain measures to minimize the effect of indoor smoke.

Defendants have a Motion for Summary Judgment (Dkt. #15). Plaintiffs have filed a Response to Defendants' Motion for Summary Judgment (Dkt. # 28) and a Motion to Defer Summary Judgment Pursuant to Rule 56(f) (Dkt. #21). All dispositive pre-trial matters were initially referred to Magistrate Judge Wallace Capel, Jr. for report and recommendation under 28 U.S.C. § 636(b)(1)(B)  (Dkt. #2). This order has been modified with such references being transferred to the undersigned (Dkt. #23).

**II.    FACTS**

Mr. Stevens-Bey was housed at Macomb Correctional Facility (MRF) from December 17, 2004, to June 16, 2005, and is currently located at Saginaw Correctional Facility (Dkt. #4, p. 2). When he transferred to MRF, he requested smoke-free housing due to allergies (Dkt. #4, p. 7). Mr. Stevens-Bey was placed in a regular housing unit, and Plaintiffs allege that Mr. Stevens-Bey was moved to a smoke-free wing only after filing several complaints with administrative personnel (Dkt. #4, p. 7). Plaintiffs have not furnished any copies of such complaints to this Court.

Mr. Wells is currently housed at MRF (Dkt. #4, p. 2), but Plaintiffs' complaint does not include the precise start date of his incarceration at MRF. Plaintiffs aver that immediately after his arrival at MRF, Plaintiff Wells requested smoke-free housing to accommodate his chronic obstructive pulmonary disease (COPD) (Dkt. #4, p. 3), and one month later, he was placed in

2

Housing Unit 3, Wing C, a designated tobacco-free environment.

Smoking is prohibited inside all MDOC buildings pursuant to MDOC Policy Directive 01.03.140 (04/24/06), but there are also designated tobacco-free areas within MRF, such as the C- and D-wings of Housing Unit 3.  Prisoners in tobacco-free areas are prohibited from purchasing or possessing any smoking materials while in the tobacco-free area, and prisoners who are to be placed in tobacco-free housing are required to agree, in writing, to their placement and the attendant restrictions.  Priority in placement is given to those prisoners with medical details or special accommodation notices requiring tobacco-free housing (MDOC Policy Directive 01.03.140).

Plaintiffs concede that Defendants have, in fact, designated certain wings within a particular housing unit as a tobacco-free environment, but they claim that their placement within such an environment does not provide sufficient protection from ETS.  They allege that several factors contribute to their unwanted exposure to ETS:  (1) physically disabled prisoners who smoke are placed inside the C-Wing of Housing Unit 3, an otherwise tobacco-free wing; (2) the housing unit is structurally designed such that ETS is not blocked from entering their rooms; (3) the prohibition on smoking in the wing is not effectively enforced; and (4) Defendants' sporadic and inconsistent scheduling of "smoke-breaks" forces prisoners to smoke clandestinely.

**A.       Placement of Disabled Prisoners Who Smoke  in Tobacco-Free Housing**

Although the C-Wing of Housing Unit 3 at MRF is a designated tobacco-free area, both smoking and non-smoking physically disabled prisoners are also placed in that wing.  Plaintiffs claim that approximately half of the rooms in the wing are handicapped-accessible, although they do not state whether those rooms are in fact exclusively occupied by disabled prisoners, nor

do they estimate what number of physically disabled prisoners actually smoke in the wing (Dkt. #4, p. 3). Plaintiffs state that they attempted to bring this issue to the attention of prison authorities, and but these complaints were not adequately addressed. Resident Unit Manager Nunnery sent a memorandum to Assistant Deputy Warden Scott, dated December 9, 2004, in which RUM Nunnery summarized the proceedings of a community meeting in Housing Unit 3 (Dkt. #1, Exhibit A). Regarding the smoking in the wings, the RUM stated, "Currently C and D wings is [sic] the designated Smoke Free Wings for level II, with the exception of the handicap [sic] prisoners on C-wings that smoke. All handicap [sic] prisoners that smoke will be moved toward the front of the wing."

When Plaintiffs filed grievances regarding the issue, prison officials responded by reiterating that the facility has made an exception to its tobacco-free housing unit, because the unit designated for handicapped prisoners is also the unit where the tobacco-free area is located. Because there is a single "handicapped" elevator, it must be used by smoking and non-smoking handicapped prisoners alike (Dkt. #1, Exhs. C-H).

### B. Housing Unit Design

Plaintiffs describe the ETS problems associated with the housing unit's design as follows:

> 14. The housing unit ventilation system is designed to introduce fresh air through intake ducts in the common day rooms and through common entrance/ exit doors. In fact, all of the 24 day room windows are currently forced fully open and the closing handles were removed by the maintenance staff. The air is vented/ exhausted through a large air duct located at the end of the hallway of each wing. The air intake system of the day rooms are located at one end of the building while the vent/exhaust ducts are located at the opposite end of the building at the end of the hallway of each wing.
> 15. The effects of the ventilation system design forces the tobacco smoke from the common day rooms, common bathrooms and handicap rooms to traverse

>the entire hallway past <u>all</u> prisoner rooms until it is vented/exhausted through the ducts at the end of the hallway.
>   16. The tobacco smoke from the common exit/entrance doors also traverse the hallways in a like manner because correctional officers who smoke do not observe the mandate to stand 20 feet from the entrance door while smoking (the signs announcing the 20 feet mandate, in observation of Michigan Governor's Executive Order 1992-3, have been modified to exclude any mandatory distance language because of too many complaints of non-compliance).
>   17. The ventilation system operates sporadically which causes the prisoner room windows to act as vent/exhaust devices. The smoke-infested air enters the rooms under the door openings, travel through the prisoner rooms, and then exits the prisoner room windows.
>   18. The handicap prisoner rooms are located at the entrance to Wing C and the ventilation system duct is located at the opposite end of the hallway. Tobacco smoke travels down the entire hallway past all prisoner rooms to exit through the ventilation duct system.
>   19. The vent/exhaust portion of the ventilation system appears non-operational in winter months which forces the prisoner room windows to serve as the vent/exhaust device. Also, the vent/exhaust ventilation ducts in the common bathrooms do not operate much of the time.
>   20. Prisoners cannot escape the effects of ETS because they are relegated to either their rooms, the common day rooms or the common bathrooms during the majority of a 24-hour day.

(Dkt. #4, pp. 4-5.)

Defendants have countered that MRF has been the subject of yearly air quality testing by the American Correctional Association, and the facility has met the industry safety standards for air quality and ventilation (Dkt. #15-1, pp. 7-8; Dkt. #15-4).

### C.     Failure to Enforce Ban on Smoking

Plaintiffs allege that Defendants knowingly fail to enforce their own policies, which are designed to protect non-smoking prisoners from ETS. They also claim that the manager of the prisoner store freely sells tobacco products to those prisoners residing in the smoke-free environment, in violation of MDOC Policy Directive 01.03.140 (04/24/06), which provides:

>M.    Wardens shall designate tobacco free housing for general population prisoners within each of their respective institutions. Institutions containing more

5

>than one security level shall have tobacco-free housing in each security level; each camp and reception facility also shall have tobacco free housing available. Additional tobacco-free housing shall be designated if demand for such housing cannot be met within a reasonable time.
>N.     Prisoners in tobacco-free housing are prohibited from purchasing any smoking materials.  They also are prohibited from possessing smoking materials while in tobacco-free housing areas, including the common area of a housing unit with tobacco-free housing.[1]

Plaintiffs argue that "Defendants do not, with any reasonable assurances, prevent other prisoners from smoking tobacco products within this housing unit.  Thus, Defendants have failed to create a 'true' smoke-free environment" (Dkt. #4 at page 1).  Defendants maintain that MRF staff has issued 229 misconduct tickets for smoking violations since November 1, 2004, to July 13, 2006, which reflects that MRF staff, under direction of Defendants, are making serious attempts to enforce the non-smoking policy (Dkt. #15-1, p. 17).

### D.     Inconsistent Scheduling of Smoke Breaks

Plaintiffs argue that prisoners smoke in the housing unit as the result of a rigid movement schedule, allegedly promoted by Defendant Wolfenbarger, which limits access to outdoor areas ("smoke-breaks") in winter months (Dkt. #4, p. 5).  Plaintiffs allege, "Defendants sporadically and inconsistently announce these 'smoke-breaks' which forces a smoking prisoner to clandestinely smoke in the housing unit to the detriment of those prisoner [sic] wishing to avoid the harmful effects of ETS" (Dkt. #4, p. 6).  They also state that smoking in the housing unit causes conflict between smoking and non-smoking prisoners, creating the likelihood of violence.

## III.   STANDARD

### A.     Standard for Liability  under § 1983

---

[1] Although Plaintiffs cite to MDOC Policy Directive 01.03.140 (11/15/04), which has since been superseded by the 04/24/06, the language in the 2004 version is identical to the 2006 version.

In order to demonstrate liability under 42 U.S.C. § 1983, a plaintiff must establish that: 1) he was deprived of a right secured by the federal Constitution or laws of the United States; 2) the deprivation was caused by a person acting under color of state law; and 3) the deprivation occurred without due process of the law." *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994) (citing *Rhodes v. McDannel*, 945 F.2d 117, 119 (6th Cir. 1991), cert. denied, 502 U.S. 1032, 112 S. Ct. 872 (1992)).  Respondeat superior is not a basis for liability under 42 U.S.C. § 1983, *Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197 (1989), unless the plaintiff shows "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).

### B.     Standard for Eighth Amendment Conditions of Confinement Claim

The Supreme Court has recognized the responsibility of the courts "to scrutinize claims of cruel and unusual confinement." *Rhodes v. Chapman*, 452 U.S. 337, 352 (1981). Included as a type of conduct that violates the Eighth Amendment is a prison official's deliberate indifference to a prisoner's serious medical needs. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). To succeed on a claim of deliberate indifference based on exposure to environmental tobacco smoke (ETS), Plaintiffs must demonstrate both objective and subjective components.

> The test for determining deliberate indifference based on exposure to ETS has both objective and subjective components. *Helling v. McKinney,* 509 U.S. 25, 35, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993). To satisfy the objective component, a prisoner must show that his medical needs are "sufficiently serious." *Hunt v. Reynolds,* 974 F.2d 734, 735 (6th Cir. 1992). The exposure to smoke must cause more than "mere discomfort or inconvenience."  *Id.* at 735.  Additionally, the prisoner must demonstrate that the risk is one which society deems "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling,* 509 U.S. at 36, 113 S. Ct. 2475. To satisfy the subjective component, a prisoner must show that prison authorities knew of, and manifested deliberate

7

indifference to, his serious medical needs. *Id.* at 32, 113 S. Ct. 2475. *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005).

A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the officials knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The fact that a potential medical injury lies in the future does not change the analysis. *Thaddeus-X v. Blatter*, 175 F. 3d 378, 402 (1999).

    **C.**    **Summary Judgment**

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment is improper, however, if the non-movant has not been afforded a sufficient opportunity for discovery. *White's Landing Fisheries, Inc. v. Buchholzer,* 29 F.3d 229, 231-32 (6th Cir. 1994), *accord Plott v. General Motors Corp.*, 71 F.3d 1190, 1195 (6th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S. Ct. 2505, 2511 n. 5, 91 L. Ed. 2d 202 (1986)), *cert. denied,* 517 U.S. 1157, 116 S. Ct. 1546 (1996). The non-movant bears the obligation to inform the district court of his need for discovery, and before a summary judgment motion is decided, he must file an affidavit pursuant to Fed. R. Civ. P. 56(f) which details the discovery needed, or file a motion for additional discovery. *Vance By and Through Hammons v. U.S.*, 90 F.3d 1145, 1149 (6th Cir. 1996) (footnotes omitted). "Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts

9

it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) (citation omitted).  If the non-movant makes a proper and timely showing of a need for discovery, the district court's entry of summary judgment, without permitting him to conduct any discovery at all, will constitute an abuse of discretion.  *Vance By and Through Hammons*, 90 F.3d at 1149.

### IV.  ANALYSIS

#### A.  Defendants' Motion for Summary Judgment and Plaintiff's Motion to Defer Summary Judgment

Defendants filed a Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56, arguing that (1) there is no genuine issue of material fact on Plaintiffs' Eighth Amendment Claim (Dkt. #15-1, pp. 5-9); (2) that Defendants are not liable under 42 U.S.C. § 1983 because they were not personally involved in the matters giving rise to the complaint (Dkt. #15-1, pp. 9-10); (3) Defendants' alleged violation of governmental policy does not rise to level of constitutional violation (Dkt. #15-1, pp.10-11); (4) Plaintiffs' state law claims should be dismissed for lack of jurisdiction (Dkt. #15-1, pp. 11-12); and (5) Defendants are entitled to qualified immunity (Dkt. #15-1, pp. 12-15).

After Plaintiffs filed a response to the summary judgment motion (Dkt # 28), Plaintiff Wells also filed a separate motion (Dkt. # 21), with an attached affidavit, pursuant to Fed. R. Civ. P. 56(f), requesting that this Court defer its decision on Defendants' summary judgment motion to allow Plaintiff Wells time to obtain further discovery.  Plaintiff Wells provided a detailed description of  the evidence that he is presently trying to obtain, such as: a spirometric test to confirm a diagnosis of COPD, a test to detect the presence of cotinine in his urine, which establishes the ingestion of tobacco smoke, and the services of a lung disease specialist who can

offer a sworn affidavit setting forth evidence of the severity of his COPD, the degree of his exposure to ETS, and its effect on him (Dkt. # 21, pp. 4-5).  Similar pieces of evidence, when presented in *Reilly v. Grayson*, 157 F. Supp. 2d 762 (E.D. Mich. 2001), were factors contributing to a judgment in favor of the prisoner-plaintiff in an Eighth Amendment ETS case.

Plaintiff Wells also stated in his affidavit that he has unsuccessfully attempted to secure counsel, and that he is litigating this action with the assistance of other inmates (Dkt. #21, Att. D).  He also lists several obstacles associated with his incarceration that affect his ability to proceed with the lawsuit, such as: limited access to telephones, a limited prison law library, limited services for photocopies, etc.  These factors may explain why Plaintiffs have not conducted any discovery whatsoever after filing their first amended complaint in May 2006.  In addition to developing evidence of their serious medical pulmonary conditions and evidence that the level of ETS is sufficiently high to create a substantial risk of serious harm, Plaintiffs will also need to obtain evidence or admissions that demonstrate the subjective component of their claim.  The evidence or admissions will have to show that Defendants Caruso and Wolfenbarger each knew of the risk of harm, of the disabled inmates who smoked, of the structural ventilation deficiencies, of the insufficient "smoke-breaks" and/or the lack of enforcement of the no-smoking policy.  Plaintiffs' evidence will also have to demonstrate that, knowing of such substantial risk of serious harm to Plaintiffs, each Defendant manifested deliberate indifference to Plaintiffs' serious medical needs.

Defendants filed a response to Plaintiffs' Motion to Defer Judgment, in which they stated: "Defendants have no objecion [sic] to a deferral of the decision, as Defendants also need additional time to obtain Plaintiff Wells' medical records." (Dkt. # 25, p. 2.)  Summary judgment

is clearly improper under the standard articulated above, because both parties have expressed a need for further discovery relevant to material issues of disputed fact concerning Plaintiff's medical conditions, the level of ETS to which Plaintiffs were exposed, the health risks related to that exposure, and the knowledge and/or evidence of indifference of each Defendant to the various factors contributing to the Plaintiffs' exposure to allegedly excessive levels of ETS. Plaintiffs have made a proper and timely showing of their need for discovery, which Defendants have not disputed. In light of the need for additional time for discovery relevant to the disputed issues involved in this case it would be inappropriate to enter summary judgment in favor of Defendants.

## VI. CONCLUSION

For these reasons, the undersigned recommends that Defendants' Motion for Summary Judgment be **DENIED WITHOUT PREJUDICE** and Plaintiffs' Motion to Defer Summary Judgment be **DENIED AS MOOT** in light of the denial of the summary judgment motion.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections by March 12, 2007, as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this Magistrate Judge. Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections. A party may file a reply brief within 5 days of service of a response. The reply shall be not more than five (5) pages in length  unless by motion and order such page limit is extended by the Court.

Date: February 23, 2007                                         s/Steven D. Pepe
Flint, Michigan                                                 United States Magistrate Judge

### CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Diane M. Smith, Esq., and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Bernard Stevens #166360, Saginaw Correctional Facility, 9625 Pierce Rd., Freeland, MI 48623, David Wells #125291, Macomb Regional Facility, 34625 26 Mile Rd., New Haven, MI 48048

                                                    s/ James P. Peltier
                                                    James P. Peltier
                                                    Courtroom Deputy Clerk
                                                    U.S. District Court
                                                    600 Church St.
                                                    Flint, MI 48502
                                                    810-341-7850
                                                    pete_peltier@mied.uscourts.gov