UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERNARD STEVENS-BEY and
DAVID L. WELLS,

                Plaintiffs,                CASE NO: 2:06-CV-10508

V.                                            DISTRICT JUDGE DENISE PAGE HOOD
                                                  MAGISTRATE JUDGE STEVEN D. PEPE
PATRICIA CARUSO and
HUGH WOLFENBARGER,
in their individual capacities,

                Defendants.
_____/

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. #38)
AND
PLAINTIFF WELLS' MOTION TO DEFER SUMMARY JUDGMENT (DKT. #47)**

**I.    INTRODUCTION**

Plaintiffs Bernard Stevens-Bey and Plaintiff David L. Wells are prisoners in custody of the Michigan Department of Corrections (MDOC). On February 7, 2006, they filed this action under 42 U.S.C. § 1983 against Patricia Caruso and Hugh Wolfenbarger, in their individual capacities (Plaintiffs' Complaint, Dkt. #1). Ms. Caruso is the Director of the MDOC and Mr. Wolfenbarger is the Macomb County Correctional Facility (MRF) Warden (Defendants' Motion for Summary Judgment, Dkt. #38, p. 1). Plaintiffs state that they are non-smokers suffering from serious medical conditions associated with breathing (Plaintiffs' First Amended Complaint, Dkt. #4, p. 3), and that Defendants have failed to protect Plaintiffs from involuntary exposure to environmental tobacco smoke (ETS), in violation of the Eighth Amendment. They seek

1

declaratory and injunctive relief, as well as an unspecified amount of monetary damages, for present and future injury (Dkt. #4, p. 2). Plaintiffs also make a state law claim under the Michigan Clean Indoor Air Act, MCL §§ 33.12601, *et seq*., which requires certain measures to minimize the effect of indoor smoke.

On September 13, 2006, Defendants filed their original Motion for Summary Judgment (Dkt. #15), but it was denied without prejudice in light of the need for additional time for discovery relevant to the disputed issues involved in this case (Dkt. #30).[1] Nearly a year later, Defendants filed their present Motion for Summary Judgment on September 11, 2007 (Dkt. #38). All dispositive pre-trial matters were initially referred to Magistrate Judge Wallace Capel, Jr. for report and recommendation under 28 U.S.C. § 636(b)(1)(B)(Dkt. #2). This order has been modified with such references being transferred to the undersigned (Dkt. #23).

## II.　FACTS

Mr. Stevens-Bey was housed at Macomb Correctional Facility (MRF) from December 17, 2004, to June 16, 2005, and is currently located at Saginaw Correctional Facility (Dkt. #4, p. 2). When he transferred to MRF, he requested smoke-free housing due to allergies (Dkt. #4, p. 7). Mr. Stevens-Bey was placed in a regular housing unit, and Plaintiffs allege that Mr. Stevens-Bey was moved to a smoke-free wing only after filing several complaints with administrative personnel (Dkt. #4, p. 7). Plaintiff Stevens-Bey has not furnished any copies of such complaints.

---

[1] In response to Defendants' motion, Plaintiffs filed a Response to Defendants' Motion for Summary Judgment (Dkt. #28) and a Motion to Defer Summary Judgment Pursuant to Rule 56(f) (Dkt. #21). Defendants filed a response to Plaintiffs' Motion to Defer Judgment, in which they stated: "Defendants have no objecion [sic] to a deferral of the decision, as Defendants also need additional time to obtain Plaintiff Wells' medical records." (Dkt. #25, p. 2).

Mr. Wells is currently housed at MRF (Dkt. #4, p. 2), but Plaintiffs' complaint does not include the precise start date of his incarceration at MRF. Plaintiffs claims that immediately after his arrival at MRF, Plaintiff Wells requested smoke-free housing to accommodate his chronic obstructive pulmonary disease (COPD) (Dkt. #4, p. 3), and one month later, he was placed in Housing Unit 3, Wing C, a designated tobacco-free environment.

Smoking is prohibited inside all MDOC buildings pursuant to MDOC Policy Directive 01.03.140 (04/24/06), but there are also designated tobacco-free areas within MRF, such as the C and D-wings of Housing Unit 3. Prisoners in tobacco-free areas are prohibited from purchasing or possessing any smoking materials while in the tobacco-free area, and prisoners who are to be placed in tobacco-free housing are required to agree, in writing, to their placement and the attendant restrictions. Priority in placement is given to those prisoners with medical details or special accommodation notices requiring tobacco-free housing (MDOC Policy Directive 01.03.140).

Plaintiffs concede that Defendants have, in fact, designated certain wings within a particular housing unit as a tobacco-free environment, but they claim that their placement within such an environment does not provide sufficient protection from ETS. They allege that several factors contribute to their unwanted exposure to ETS: (1) physically disabled prisoners who smoke are placed inside the C-Wing of Housing Unit 3, an otherwise tobacco-free wing; (2) the housing unit is structurally designed such that ETS is not blocked from entering their rooms; (3) the prohibition on smoking in the wing is not effectively enforced; and (4) Defendants' sporadic and inconsistent scheduling of "smoke-breaks" forces prisoners to smoke clandestinely.

**A.    Placement of Disabled Prisoners Who Smoke in Tobacco-Free Housing**

Although the C-Wing of Housing Unit 3 at MRF is a designated tobacco-free area, both smoking and non-smoking physically disabled prisoners are also placed in that wing. Plaintiffs claim that approximately half of the rooms in the wing are handicapped-accessible, although they do not state whether those rooms are in fact exclusively occupied by disabled prisoners, nor do they estimate what number of physically disabled prisoners actually smoke in the wing (Dkt. #4, p. 3). Plaintiffs state that they attempted to bring this issue to the attention of prison authorities, but these complaints were not adequately addressed. Resident Unit Manager Nunnery sent a memorandum to Assistant Deputy Warden Scott, dated December 9, 2004, in which RUM Nunnery summarized the proceedings of a community meeting in Housing Unit 3 (Dkt. #1, Exhibit A). Regarding the smoking in the wings, the RUM stated, "Currently C and D wings is [sic] the designated Smoke Free Wings for level II, with the exception of the handicap [sic] prisoners on C-wings that smoke. All handicap [sic] prisoners that smoke will be moved toward the front of the wing."

When Plaintiffs filed grievances regarding the issue, prison officials responded by reiterating that the facility has made an exception to its tobacco-free housing unit, because the unit designated for handicapped prisoners is also the unit where the tobacco-free area is located. Because there is a single "handicapped" elevator, it must be used by smoking and non-smoking handicapped prisoners alike (Dkt. #1, Exs. C-H).

**B.     Housing Unit Design**

Plaintiffs describe the ETS problems associated with the housing unit's design as follows:

> 14.  The housing unit ventilation system is designed to introduce fresh air through intake ducts in the common day rooms and through common entrance/ exit

4

doors. In fact, all of the 24 day room windows are currently forced fully open and the closing handles were removed by the maintenance staff. The air is vented/ exhausted through a large air duct located at the end of the hallway of each wing. The air intake system of the day rooms are located at one end of the building while the vent/exhaust ducts are located at the opposite end of the building at the end of the hallway of each wing.

 15. The effects of the ventilation system design forces the tobacco smoke from the common day rooms, common bathrooms and handicap rooms to traverse the entire hallway past <u>all</u> prisoner rooms until it is vented/exhausted through the ducts at the end of the hallway.

 16. The tobacco smoke from the common exit/entrance doors also traverse the hallways in a like manner because correctional officers who smoke do not observe the mandate to stand 20 feet from the entrance door while smoking (the signs announcing the 20 feet mandate, in observation of Michigan Governor's Executive Order 1992-3, have been modified to exclude any mandatory distance language because of too many complaints of non-compliance).

 17. The ventilation system operates sporadically which causes the prisoner room windows to act as vent/exhaust devices. The smoke-infested air enters the rooms under the door openings, travel through the prisoner rooms, and then exits the prisoner room windows.

 18. The handicap prisoner rooms are located at the entrance to Wing C and the ventilation system duct is located at the opposite end of the hallway. Tobacco smoke travels down the entire hallway past all prisoner rooms to exit through the ventilation duct system.

 19. The vent/exhaust portion of the ventilation system appears non-operational in winter months which forces the prisoner room windows to serve as the vent/exhaust device. Also, the vent/exhaust ventilation ducts in the common bathrooms do not operate much of the time.

 20. Prisoners cannot escape the effects of ETS because they are relegated to either their rooms, the common day rooms or the common bathrooms during the majority of a 24-hour day.

(Dkt. #4, pp. 4-5).

Defendants have countered that MRF has been the subject of yearly air quality testing by the American Correctional Association, and the facility has met the industry safety standards for air quality and ventilation (Dkt. #38, p. 8).

**C. Failure to Enforce Ban on Smoking**

Plaintiffs allege that Defendants knowingly fail to enforce their own policies, which are

designed to protect non-smoking prisoners from ETS. They also claim that the manager of the prisoner store freely sells tobacco products to those prisoners residing in the smoke-free environment, in violation of MDOC Policy Directive 01.03.140 (04/24/06), which provides:

> M. Wardens shall designate tobacco free housing for general population prisoners within each of their respective institutions. Institutions containing more than one security level shall have tobacco-free housing in each security level; each camp and reception facility also shall have tobacco free housing available. Additional tobacco-free housing shall be designated if demand for such housing cannot be met within a reasonable time.
> N. Prisoners in tobacco-free housing are prohibited from purchasing any smoking materials. They also are prohibited from possessing smoking materials while in tobacco-free housing areas, including the common area of a housing unit with tobacco-free housing.[2]

Plaintiffs argue that "Defendants do not, with any reasonable assurances, prevent other prisoners from smoking tobacco products within this housing unit. Thus, Defendants have failed to create a 'true' smoke-free environment" (Dkt. #4, p. 1). Defendants maintain that MRF staff has issued 229 misconduct tickets for smoking violations from November 1, 2004, to July 13, 2006, which reflects that MRF staff, under direction of Defendants, are making serious attempts to enforce the non-smoking policy (Dkt. #38, p. 9).

### D. Inconsistent Scheduling of Smoke Breaks

Plaintiffs argue that prisoners smoke in the housing unit as the result of a rigid movement schedule, allegedly promoted by Defendant Wolfenbarger, which limits access to outdoor areas ("smoke-breaks") in winter months (Dkt. #4, p. 5). Plaintiffs allege, "Defendants sporadically and inconsistently announce these 'smoke-breaks' which forces a smoking prisoner to clandestinely smoke in the housing unit to the detriment of those prisoner [sic] wishing to avoid

---

[2]Although Plaintiffs cite to MDOC Policy Directive 01.03.140 (11/15/04), which has since been superseded by the 04/24/06, the language in the 2004 version is identical to the 2006 version.

the harmful effects of ETS" (Dkt. #4, p. 6). They also state that smoking in the housing unit causes conflict between smoking and non-smoking prisoners, creating the likelihood of violence.

## III. STANDARD

### A. Standard for Liability under § 1983

In order to demonstrate liability under 42 U.S.C. § 1983, a plaintiff must establish that: 1) he was deprived of a right secured by the federal Constitution or laws of the United States; 2) the deprivation was caused by a person acting under color of state law; and 3) the deprivation occurred without due process of the law." *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994) (citing *Rhodes v. McDannel*, 945 F.2d 117, 119 (6th Cir. 1991), cert. denied, 502 U.S. 1032, 112 S. Ct. 872 (1992)). Respondeat superior is not a basis for liability under 42 U.S.C. § 1983, *Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197 (1989), unless the plaintiff shows "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).

### B. Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). In resolving a

summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment is improper, however, if the non-movant has not been afforded a sufficient opportunity for discovery. *White's Landing Fisheries, Inc. v. Buchholzer,* 29 F.3d 229, 231-32 (6th Cir. 1994), *accord Plott v. General Motors Corp.*, 71 F.3d 1190, 1195 (6th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S. Ct. 2505, 2511 n. 5, 91 L. Ed. 2d 202 (1986)), *cert. denied,* 517 U.S. 1157, 116 S. Ct. 1546 (1996). The non-movant bears the obligation to inform the district court of his need for discovery, and before a summary judgment motion is decided, he must file an affidavit pursuant to Fed. R. Civ. P. 56(f) which

8

details the discovery needed, or file a motion for additional discovery. *Vance By and Through Hammons v. U.S.*, 90 F.3d 1145, 1149 (6th Cir. 1996) (footnotes omitted). "Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) (citation omitted). If the non-movant makes a proper and timely showing of a need for discovery, the district court's entry of summary judgment, without permitting him to conduct any discovery at all, will constitute an abuse of discretion. *Vance By and Through Hammons*, 90 F.3d at 1149.

## IV. ANALYSIS

Defendants filed a Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56, arguing that (1) there is no genuine issue of material fact on Plaintiffs' Eighth Amendment Claim (Dkt. #38, pp. 5-9); (2) that Defendants are not liable under 42 U.S.C. § 1983 because they were not personally involved in the matters giving rise to the complaint (Dkt. #38, pp. 9-10); (3) Defendants' alleged violation of governmental policy does not rise to level of constitutional violation (Dkt. #38, p. 11); (4) Plaintiffs' state law claims should be dismissed for lack of jurisdiction (Dkt. #38, pp. 11-12); and (5) Defendants are entitled to qualified immunity (Dkt. #38, pp. 12-15).

After Plaintiffs filed a response to the summary judgment motion (Dkt #46), Plaintiff Wells also filed a separate motion (Dkt. #47), with an attached affidavit, pursuant to Fed. R. Civ. P. 56(f), requesting that this Court defer its decision on Defendants' summary judgment motion to allow Plaintiff Wells time to obtain further discovery. Plaintiff Wells' filing is nearly

identical in form and substance to his November 15, 2006, Motion to Defer Summary Judgment (Dkt. #21). It contains a detailed description of the evidence that he is presently trying to obtain, such as: a spirometric test to confirm a diagnosis of COPD, a test to detect the presence of cotinine in his urine, which establishes the ingestion of tobacco smoke, and the services of a lung disease specialist who can offer a sworn affidavit setting forth evidence of the severity of his COPD, the degree of his exposure to ETS, and its effect on him (Dkt. #47, pp. 1-3; Dkt. #21, pp. 1-3). Similar pieces of evidence, when presented in *Reilly v. Grayson*, 157 F. Supp. 2d 762 (E.D. Mich. 2001), were factors contributing to a judgment in favor of the prisoner-plaintiff in an Eighth Amendment ETS case.

In the approximately 11 months since Plaintiff Wells initially filed his Motion to Defer Summary Judgment, he has failed to undertake any significant additional discovery. The only notable activity Plaintiff has completed was to submit a formal request for testing requesting that he be given diagnostic tests (spirometry) to determine what type of COPD he suffers from so that an appropriate treatment plan can be implemented (Dkt. #47, p. 2, ¶ 5; Dkt. #21, p. 2, ¶ 5). These requests, however, were denied by the Medical Service Provider ("MSP"), which Plaintiff subsequently grieved through Step III of the grievance process. The Step III Grievance Response states that "a request for a spirometry was not deemed medically necessary." Moreover, a "review of the record reveals that the grievant has not submitted any health care requests since his evaluation indicating he is having further symptoms" (Dkt. #47, p. 39 of 48).

      A.      **Defendants' Motion for Summary Judgment**

            1.      <u>**Eight Amendment Claims**</u>

The Supreme Court has consistently held that the denial of adequate medical care can violate the Eighth Amendment. *See, e.g.*, *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 198-99 (1989). "Medical consequences of tobacco smoke do not differ from other medical problems. Prisoners allergic to the components of tobacco smoke, or who can attribute their serious medical conditions to smoke, are entitled to appropriate medical treatment, which may include removal from places where smoke hovers." *Steading v. Thompson*, 941 F.2d 498, 500 (7th Cir.1991), cert. denied, 112 S.Ct. 1206 (1992). Yet, the law does not require that a prisoner be completely free from exposure to ETS. As the Fifth Circuit stated, "the Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.), cert. denied, 493 U.S. 969, (1989). Compare, e.g., *Helling v McKinney*, 509 U.S. 25, 35 (1993)(holding that bunking with a cellmate who smoked five packs of cigarettes per day exposed an inmate to an unreasonable risk of future harm from ETS exposure), and *Atkinson v. Taylor*, 316 F.3d 257, 259 (3d Cir. 2003) (holding that a prisoner who claimed that he had shared a cell with constant smokers for many months stated a claim for a violation of a clearly established right) with *Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir. 2001) (holding that sitting near some smokers sometimes is not an unreasonable exposure to ETS) and *Pryor-El v. Kelly*, 892 F.Supp. 261, 267 (D.D.C. 1995) (dismissing an ETS claim in which the plaintiff alleged "only that various unnamed inmates and prison officials smoke 'in the TV room, games room, and the letter writing room' ").

With respect to ETS actions, there are two distinct types of claims. In a future-injury claim, a plaintiff must show, regardless of his present health, that the level of ETS in the prison

11

creates an unreasonable risk of damage to future health. *Helling*, 509 U.S. 25 (1993). In a present-injury claim, a plaintiff must establish a medical need for a smoke-free environment and show that he suffered serious smoke-related medical problems as a result of not being placed in a smoke-free environment. *Hunt v Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992); *See also Weaver v. Clarke*, 45 F.3d 1253, 1255-56 (8th Cir. 1995) (distinguishing between future-injury and present-injury claims). Both types of claims require the prisoner to establish an adverse condition. *Weaver*, 45 F.3d at 1255.

### i. *Present Injury Claim*

To the extent that Plaintiff has made a claim of present injury because of exposure to ETS, the appropriate standard against which to test his claims is *Estelle v. Gamble,* 429 U.S. 97 (1976). In *Estelle*, the Supreme Court concluded that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, which violates the Eighth Amendment. *Id*. at 104. The *Estelle* Court recognized that even in less serious cases, where the prisoner does not experience severe torment or a lingering death, the infliction of unnecessary suffering is inconsistent with standards of decency. *Id*. at 103. Specifically, the Supreme Court stated: "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106.

"The standard enunciated in *Estelle* is two-pronged: '[i]t requires deliberate indifference on the part of the prison officials and it requires the prisoner's medical needs to be serious.' " *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326 (3d Cir.1987),

12

quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978). Defendants concede that Plaintiff Steven-Bey's physician diagnosed him with a mild allergy condition and that he received a medical recommendation in February 2005 to reside in tobacco-free housing (Dkt. #38, p. 8). Yet, Plaintiff Stevens-Bey was in-fact transferred to tobacco-free housing within a month of his arrival by MRF officials. During the time period alleged in the complaint, the worst physical problem that Plaintiff Stevens-Bay alleges is mild respiratory problems. Defendants contend that the injury, if any, that Plaintiff Stevens-Bey sustained was minimal.

Plaintiff David Wells' medical records show that he has long suffered from chronic lung disease or COPD and that he sometimes has breathlessness, wheezing, and coughing (Dkt. #38, Ex. E, pp 25-26 (statements recorded January 2004 and July 2004)). Yet, these symptoms could be a result of the fact that Plaintiff was a smoker for 6-10 years. Plaintiff Wells has failed to show any injury caused by ETS at MRF.

Even assuming, *arguendo*, that both Plaintiffs suffer from serious medical conditions, Plaintiff must show deliberate indifference on the part of the prison officials to their conditions. Under the deliberate indifference standard, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To establish deliberate indifference, actual knowledge of harm is required. An "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Importantly, it is not sufficient for Plaintiffs to merely allege that Defendants were aware that some of the prisoners were smoking in violation of the policy. Rather, Plaintiffs are required to show that

13

Defendants knew that the levels of ETS were sufficiently high to cause serious health problems.

Plaintiffs have, however, failed to show that Defendants were aware that whatever amount of ETS there may have been at Macomb Correctional Facility was so high as to amount to a serious risk to Plaintiffs' health. To the contrary, Defendants have offered evidence that the levels of ETS at the facility were at acceptable levels. For instance, in his affidavit, Defendant Wolfenbarger indicates that air quality testing by ACA is completed on a yearly basis at MRF. Such testing was completed at MRF in 2004 and the air quality and ventilation of the facility was deemed compliant with Michigan's environmental health standards (Dkt. #38, Ex. F, Wolfenbarger Affidavit and attachments thereto). While Defendants concede it is certainly possible at times to smell cigarette smoke coming from an individual prisoner who chose to break the non-smoking rule, Plaintiffs have provided no evidence that there are, and Defendants were aware of, unreasonably high levels of ETS in any of the housing units at MRF.

Further, the MDOC has a no-smoking policy, as Plaintiffs acknowledge in their complaint (Dkt. #38, Exs. G and H). The adoption of a no-smoking policy "will bear heavily on the inquiry into deliberate indifference." *Helling*, 509 U.S. at 36. Further, Defendants have provided evidence that they were mindful that smoking in tobacco free units is an issue and that the issue was addressed by writing misconduct tickets against rule violators (Dkt. #38, Ex. F, p. 2, Wolfenbarger Affidavit and attachments). Although Defendants may not have been able to achieve perfect enforcement, "[i]mperfect enforcement of the policy by defendants does not equate to deliberate indifference on their part." *Green v Martin*, 2001 U.S. App. LEXIS 19066 (6th Cir. 2001) at *5; *see also Moorer v Price*, 2003 U.S. LEXIS 26375 (6th Cir. 2003) (Unpublished dispositions)(Dkt. #38, Exs A and B). The 229 misconduct tickets written for

14

smoking violations from November 1, 2004, to July 13, 2006, undercuts a claim that staff at MRF is acquiescing in violations of the non-smoking policy or that Defendants were aware of insufficient enforcement that was so severe as to create a significant health risk to inmates.

Because Plaintiffs have failed to present evidence form which a reasonable fact finder could find deliberate indifference by the Defendants their present injury claim fails, and Defendants are entitled to summary judgment on that issue.

### ii. *Future Injury Claim*

With respect to the future injury claim, the appropriate standard against which to test his claims is *Helling*, 509 U.S. 25 (1993). In *Helling*, the Supreme Court determined that a cause of action exists under the Eighth Amendment when a prisoner alleges that prison officials have exposed him, with deliberate indifference, to levels of ETS that pose an unreasonable risk of harm to his future health. *Id.* at 35. The Court explained that the first prong of the *Helling test* is an objective one: "[The prisoner] must show that he himself is being exposed to unreasonably high levels of ETS." *Id.* With respect to the objective factor, the Court noted that beyond a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS, the Eighth Amendment requires "a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Id.* at 36 (emphasis in original). The Court stated: "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.*

The second prong of the *Helling* test is a subjective one: whether prison officials were deliberately indifferent to a serious risk of harm. *Id*. at 36. As noted above, the Supreme Court

has held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. 825, 837 (1994).

Plaintiffs have failed to come forward with sufficient evidence in support of the objective prong for a future injury claim. They have not produced any scientific and statistical evidence that they have been exposed to unreasonably high levels of ETS. In those cases where a prisoner prevailed in an ETS case, there was clear, scientific evidence concerning the prisoner's exposure to ETS. For example, in *Reilly,* 157 F.Supp 2d at 766, the prisoner had a urine test that provided a cotinine level, which is a scientific indicator of the level of tobacco smoke exposure. A different expert witness then testified as to what these chemical levels would mean with respect to the prisoner's future health. Unlike the successful plaintiff in *Reilly*, Plaintiffs have come forward with absolutely no scientific or other objective evidence concerning the levels of ETS. Subjective accounts of the amount of ETS from Plaintiffs themselves or other lay witnesses are insufficient. Moreover, Plaintiffs have failed to come forward with sufficient evidence that the levels of ETS at the Macomb Correctional Facility are so high as to violate contemporary standards of decency.

As noted above, Plaintiffs have also failed to show that Defendants were deliberately indifferent to Plaintiffs' serious medical needs or that they were at high risk of serious injury as a result of exposure to ETS. While there are clearly violations to the smoke-free policy, Defendants do not have to show that they were able to achieve perfect enforcement of the

tobacco-free policy. Rather, Plaintiffs must provide evidence that they have been exposed to "unreasonably high levels of ETS." Because they have failed to provide evidence from which a reasonable fact finder could find a present-injury or future-injury claim there is no genuine issue of material fact on Plaintiffs' Eighth Amendment Claim.

### 2. State Claims

Plaintiffs also seek to bring state claims under the Michigan Clean Air Act. 28 U.S.C. § 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Thus, once a court has dismissed a plaintiff's federal claim, the court must exercise its discretion on whether to exercise its supplemental jurisdiction. *See Campanell v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc v Federal Express Cor*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). Because Plaintiffs have failed to demonstrate any compelling reason for this Court to retain supplemental jurisdiction over their pending state claims, it is recommended that this Court decline to exercise its supplemental jurisdiction.

### B. Plaintiff Wells' Motion to Defer Summary Judgment

Defendants submitted a Motion for Summary Judgment on September 13, 2006. On November 8, 2006, Plaintiff Wells filed a Motion to Defer Summary Judgment on Defendants' motion so that he could have more time to obtain medical evidence. Defendants agreed to the motion because, at the time, Plaintiff Wells' medical records had not been obtained. Ten months later, on September 11, 2007, Defendants resubmitted a similar Motion for Summary Judgment.

Because "the scope of discovery is within the sound discretion of the trial court," the non-movant has "no absolute right to additional time for discovery." *Emmons v. McLaughlin*, 874 F.2d 351, 356 (6th Cir. 1989) (citations omitted). Nevertheless, the district court must afford the non-movant a "sufficient opportunity for discovery." *Vance*, 90 F.3d at 1148 (citing *White's Landing Fisheries, Inc.*, 29 F.3d at 231-32); *see also Celotex*, 477 U.S. at 322-23, 106 S.Ct. 2548 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, *after adequate time for discovery* and upon motion.") (Emphasis added); *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002) (citations omitted).

Here, Plaintiffs have had "adequate time" for discovery. They filed the present complaint on February 7, 2006. This Court usually allows 4-6 months for discovery.[3] Yet, Plaintiffs' have been allowed to conduct discovery for over 20 months. *See Bowling v. Wal-Mart Stores, Inc.*, 233 Fed. Appx. 460 (6th Cir. 2007)(holding the district court did not abuse its discretion in slip and fall case in granting summary judgment prior to discovery cut-off date purportedly established under pretrial order, where plaintiffs had seventeen months to conduct discovery). Further, this Court has previously granted Plaintiffs additional time to conduct discovery by denying Defendants' original Motion for Summary Judgment (Dkt. #30), and yet Plaintiffs have failed to produce any additional relevant evidence in the nearly 8 months since the February 23, 2007, Report and Recommendation was issued.

While it does appear that Plaintiff Wells has tried to receive diagnostic testing, those attempts have been frustrated by denials made by the prison's medical service providers (citing lack of medical necessity). He fails to indicate in his present Motion to Defer Summary

---

[3] See Judge Denise Page Hood, *Practice Guidelines for Judge Denise Page Hood*, http://www.mied.uscourts.gov/Judges/guidelines/topic.cfm?topic_id=168.

Judgment in what manner he will now secure such tests and/or within what time frame. Further, there is no evidence that Plaintiff Wells has attempted to complete his other various discovery tasks, such as gaining the services of a lung disease specialist who can offer a sworn affidavit setting forth evidence of the severity of his COPD, the degree of his exposure to ETS, and its effect on him.

Accordingly, because Plaintiffs have been given a substantial period of time to conduct discovery, Plaintiff Wells' Motion to Defer Summary Judgment should be denied.

## V. CONCLUSION

For these reasons indicated above, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED** and Plaintiff Wells' Motion to Defer Summary Judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof, as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections. If the Court determines any objections are without merit, it may rule without awaiting the response to the objections.

Dated: October 31, 2007                   s/Steven D. Pepe
Flint, Michigan                                      United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2007, I electronically filed the foregoing paper with the Clerk Court using the ECF system which will send electronic notification to the following: Christine M. Campbell, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Bernard Stevens #166360, Mound Correctional Facility, 17601 Mound Rd., Detroit, MI 48212, David Wells #125291, Macomb Regional Facility, 34625 26 Mile Rd., New Haven, MI 48048

                                                     s/ James P. Peltier
                                                     James P. Peltier
                                                     Courtroom Deputy Clerk
                                                     U.S. District Court
                                                     600 Church St.
                                                     Flint, MI 48502
                                                     810-341-7850
                                                     pete_peltier@mied.uscourts.gov